IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHARLES W., CATHY W., and T.W.,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED BEHAVIORAL HEALTH, and the WELLS FARGO & COMPANY HEALTH PLAN,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:18-cv-829-TC |

Plaintiffs Charles W. and Cathy W. are the parents of Plaintiff T.W. Charles is a participant in the Defendant Wells Fargo & Company Health Plan (the Plan). The Plan is a self-funded employee welfare benefits plan and Defendant United Behavioral Health (UBH) was the third party claims administrator for the Plan during the relevant time.

From January 4, 2017, until January 19, 2018, T.W. received inpatient mental health treatment at Chrysalis, "a licensed and accredited therapeutic boarding school that provides residential treatment for girls between the ages of 13 and 18." (Compl. at ¶ 4, ECF No. 2.)

On April 17, 2017, UBH sent Charles and Cathy a letter denying payment for T.W.'s treatment at Chrysalis. In the letter, UBH justified its denial on the grounds that T.W. did not need the level of care given at Chrysalis. (Id. ¶ 16.)

Charles and Cathy appealed the decision, arguing that UBH had made a number of errors in its denial letter and so had violated ERISA. But UBH sent Plaintiffs a second letter upholding its initial denial of payment. In this second letter, UBH gave a number of reasons why, in

1

UBH's view, T.W. did not meet the criteria for the level of care given at a residential treatment center. Once again, Plaintiffs unsuccessfully appealed the denial of payment.

Plaintiffs have now filed this lawsuit claiming that the denial of benefits caused Charles and Cathy to incur $149,000 in medical expenses that should have been paid by the Plan. They assert two causes of action: the first for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B); the second for violation of the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA or "Parity Act").

Defendants responded to the lawsuit by filing a motion to dismiss, arguing that: (1) the court must dismiss the lawsuit in its entirety because T.W. is a member of a pending class action against UHB; (2) Plaintiffs' second claim must be dismissed because they failed to plead the required elements of a Parity Act claim; and (3) Charles and Cathy do not have standing to assert individual causes of action. (Defs.' Mot. Dismiss, ECF No. 7.)

I. **MOTION TO DISMISS STANDARD**

In considering a motion to dismiss, all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the non-moving party. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court's role "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient." Miller v. Glanz, 948 F.2d 1526, 1565 (10th Cir. 1991).

II. **ANALYSIS**

    **A. Standing**

Defendants contend that T.W.'s parents, Charles and Cathy, do not have the requisite

statutory and constitutional standing to assert the claims alleged in the Complaint. Because the court is dismissing the MHPAEA claim, the court limits its discussion to standing to seek recovery of benefits for T.W.'s treatment. In addition, because Plaintiffs, at the hearing, agreed to remove Cathy W. from the case, the court only addresses Charles W.'s standing to bring a claim under ERISA.

ERISA grants statutory standing to a participant or beneficiary seeking to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). According to Defendants, Charles W. lacks statutory standing because "the allegations in the Complaint relate exclusively to T.W.'s treatment and her claim for benefits" and Charles does not allege that he was denied benefits relating to his treatment. (Mot. Dismiss at 20, ECF No. 7.) At best, they say, Charles "can only seek to enforce [his] daughter T.W.'s alleged right to benefits under the Plan" in his role as her guardian. (Mot. at 20.) They raise the concern that Charles' effort to enforce T.W.'s rights under the Plan as her guardian "would result in duplicative and unnecessary claims because T.W. is already seeking relief for denial of her alleged right to benefits." (Mot. Dismiss at 20.) And they maintain that Charles is essentially bringing a claim for compensatory damages because he paid the money for T.W.'s treatment. Compensatory damages, which traditionally offer legal, rather than equitable relief, are not available under ERISA. See Mertens v. Hewitt Assocs., 508 U.S. 248, 255 (1993); Kidneigh v. UNUM Life Ins. Co. of Am., 345 F.3d 1182, 1185 ("'Nowhere does [ERISA] allow consequential or punitive damages. Damages are limited to the recovery of 'benefits due … under the terms of the plan.'") (quoting Conover v. Aetna US Health Care, Inc., 320 F.3d 1076,

1080 (10th Cir. 2003)).

Charles is the Plan participant. He designated his minor child, T.W., as a beneficiary of his Plan benefits. And of course he incurred costs that he contends should have been paid by UBH because T.W.'s treatment (treatment she received when she was a minor) was covered by the Plan. Under the statute he has standing to "enforce his rights under the terms of the plan[.]" ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). That includes enforcing his right under the Plan to obtain coverage for his minor child's medical bills. That is sufficient to establish statutory standing.

Defendants also assert that Charles does not have constitutional standing because he "ha[s] not (and cannot) allege an injury-in-fact to [himself] stemming from the alleged improper denial of benefits to T.W." (Mot. Dismiss at 21.) The court disagrees.

To establish constitutional standing, a plaintiff must show three things: (1) he suffered an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury and the conduct complained of," which means the injury is fairly traceable to the defendant; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).

Charles has satisfied those elements. First, he alleges he has incurred debt based on the improper denial of his daughter's benefits. Indeed, Charles is contractually obligated to the providers to pay $149,000 for treatment of T.W. that he contends was covered by the Plan. (See Compl. ¶ 30, ECF No. 2.) That is an injury-in-fact. Second, he is left holding the bill because Defendants did not pay for the treatment. That connects his injury to the Defendants. And,

finally, if the court were to hold that Defendants should have covered T.W.'s treatment, the payment of those benefits would redress his injury.

For the foregoing reasons, the court holds that Charles has standing to bring the first cause of action against the Defendants.

### B. Pending Class Action

Defendants argue that this lawsuit should be dismissed or stayed because T.W. is a member of a pending class action, Wit v. United Behavioral Health, 3:14-cv-2346-JCS (N.D. Cal., May 21, 2014).[1]

Plaintiffs respond that Defendants are incorrect because Plaintiffs' claims here are different than those asserted in Wit because their claims go beyond the Wit claim period. Moreover, Plaintiffs assert that they did not receive notice of the Wit lawsuit or their right to opt out. Finally, Plaintiffs contend that if the court decides they were on constructive notice of the Wit action, the facts of this case justify the court's extending the opt-out period.

The relevant certified class in Wit is defined as:

> Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for mental illness or substance abuse disorder was denied by UBH, in whole or in part, on or after May 22, 2011, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines.

(Mot. Dismiss at 8 n.6.)

After reviewing Plaintiffs' complaint, the court concludes that the UBH Guidelines are at the center of Plaintiffs' claims here. For example, Paragraph 19 of their complaint reads:

> Charles and Cathy argued that UBH had used contradictory and mutually exclusive guidelines to deny T.'s treatment. The reviewer wrote that one of the factors for denying care was that T. was "not a danger to yourself or others," while Optum's residential treatment guidelines require that "the member is not in

---

[1] At oral argument, Defendants clarified that they were basing this argument only on the Wit lawsuit and not on another class action, which they had pointed to in their written materials.

imminent or current risk of harm to self, others, and/or property." They argued that UBH could not discharge T. for not being a threat to herself or others, while simultaneously requiring that she not be a threat to herself or others to continue care.

(Compl. ¶ 19.)

In Paragraph 23, Plaintiffs quoted part of UBH's denial letter of November 10, 2017, in which an examiner stated, "I reviewed your child's medical record and it is my opinion that her condition did not meet criteria for this level of care. Your child could be treated in a less intensive Level of Care." (Id. ¶ 23; see also id. ¶¶ 16, 21, 23, 26, 28.)

Plaintiffs' assertion that their claims do not fall within the Wit time period is incorrect. The Wit certified class includes claims that were "denied by UBH, in whole or in part, on or after May 22, 2011...." (Wit v. United Behavioral Health, Sep. 19, 2016 Order Granting Mot. for Class Certification at 12, ECF No. 174 in 3:14-cv-2346-JCS (N.D. Cal.).) Plaintiffs' first claim was denied on April 17, 2017 (Compl. ¶ 16), a date within the Wit time frame.

Plaintiffs' contention that because they didn't receive notice of the Wit class action is not persuasive. The Tenth Circuit noted in Burns v. Copley Pharm., Inc., 132 F.3d 42 (unpublished), Case No. 96-8054, 1997 WL 767763, (10th Cir. Dec. 11, 1997), that "[a]ctual receipt of notice is not necessary … so long as the best practicable notice was given to absent class members." Id. at *3 (citing Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994)). The notice given in Wit was the "best notice practicable under the circumstances." (Wit, June 16, 2017 Stipulation & Order Regarding Mot. for Class Certification at 2, ECF No. 263 in 3:14-cv-2346-JCS (N.D. Cal.).)

Finally, Plaintiffs' argument that their failure to opt out should be excused and a late opt out would not prejudice the Wit certified class are issues that this court cannot resolve. Plaintiffs must address these questions with the Wit court. See Burns, 1997 WL 767763 at *3.

### C. Sufficiency of MHPAEA Claim Allegations

In April 2017, UBH denied Plaintiffs' claim for coverage of T.W.'s residential treatment at Chrysalis, which, according to the Complaint, is a "licensed and accredited therapeutic boarding school that provides residential treatment for girls between the ages of 13 and 18." (Compl. ¶ 4.) UBH said it denied the claim based on lack of medical necessity. But Plaintiffs say that assessment was not valid because UBH's denial was premised on a violation of the Parity Act.

"Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 356 (2d Cir. 2016), quoted in Michael D. v. Anthem Health Plans of Kentucky, Inc., 369 F. Supp. 3d 1159, 1174 (D. Utah 2019). The Parity Act requires group health plans which provide benefits for both medical/surgical treatment and behavioral health treatment to "ensure" that limitations on behavioral health treatment "are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A)(ii). While many treatment limitations are quantitative by nature, the Parity Act protection extends to qualitative limitations regardless of whether those limitations are "written" or exist by "operation." 29 C.F.R. §§ 2590.712(a), .712(c)(4)(i).

Although "there is no clear law on how to state a claim for a Parity Act violation," Michael D., 369 F. Supp. 3d at 1174, numerous courts have adopted the helpful format set forth in Welp v. Cigna Health & Life Ins. Co., No. 17-80237-CIV, 2017 WL 3263138, at *6 (S.D. Fla. July 20, 2017). Under that framework, a plaintiff should identify a specific limitation on

7

behavioral health treatment coverage, identify medical or surgical services that are covered under the plan and analogous to the specific behavioral health services at issue, and plausibly allege a disparity in the limitation criteria applicable to this analogous medical or surgical service on the one hand and the mental health or substance use treatment on the other. As explained below, the court finds that Plaintiffs have not alleged a Parity Act claim.

First, the court notes that the Plan's express language provides that a claim is not covered if the treatment was not medically necessary. According to the Summary Plan Description (SPD), the Plan covers services provided "for the purpose of preventing, diagnosing, or treating a sickness, an injury, mental illness, substance abuse or their symptoms" that the claims administrator has determined to be "medically appropriate." That requires the treatment to be "[n]ecessary to meet the basic health needs of the participant," be "[c]onsistent in type, frequency, and duration of treatment with scientifically based guidelines of national medical research," and be "[i]n accordance with generally accepted standards of medical practice." (SPD at pp. 2-47 and 2-48, ECF No. 8-1.) Those standards are "based on creditable scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community … resulting in the conclusion that the service or supply is safe and effective for treating or diagnosing the condition or sickness for which its use is proposed." (Id. at 2-48.)

These standards apply to all types of treatment covered by the Plan, not just behavioral health treatment. In other words, there is no express limitation in the Plan. Indeed, Plaintiffs, who have not identified a written discrepancy, conceded in their opposition brief that they "do not make a facial challenge that the Plan, by its express terms, excludes intermediate residential treatment for mental health claims. … Instead, the Complaint alleges an as applied MHPAEA violation." (Opp'n at 10, ECF No. 21 (emphasis added).)

But Plaintiffs' "as applied" claim does not fare well under the federal pleading standards. For the most part, Plaintiffs simply parrot the language of the statute and implementing regulation. For example, the Complaint alleges that the Plan does not "exclude coverage for medically necessary care of medical/surgical conditions based on <u>geographic location, facility type, provider specialty or other criteria</u> in the manner UBH excluded coverage of treatment for T. at Chrysalis." (Compl. ¶ 39.) The regulation provides an illustrated list of non-quantitative treatment limitations including "restrictions based on <u>geographic location, facility type, provider specialty, and other criteria</u> that limit the scope or duration of benefits for services provided under the plan or coverage." 29 C.F.R. § 2590.712(c)(4)(ii)(H).

Plaintiffs' Complaint does not identify any Plan limitation based on geographic location, facility type, or provider specialty nor do the UBH denials cite to any.[2] And Plaintiffs do not explain what they mean by the general phrase "in the manner UBH excluded coverage."

Plaintiffs also allege in conclusory fashion that UBH used "<u>processes, strategies, standards, or other factors</u> to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the <u>processes, strategies, standards or other factors</u> used to limit coverage for medical/surgical treatment in the same classification." (Compl. ¶ 41 (emphasis added).) That too parrots and paraphrases the regulation. See 29 C.F.R. § 2590.712(c)(4)(i) (barring non-quantitative limitations, whether written or in operation, on "<u>any processes, strategies, evidentiary standards, or other factors used</u>" to analyze mental health or substance use disorder benefits that are not used to analyze

---

[2] To the extent provider specialty could be connected to the Plan's reference to wilderness treatment as experimental (see Compl. ¶ 23), that criterion falls within the "medical necessity" requirement that treatment be "in accordance with generally accepted standards of medical practice." (See SPD at 2-47 to 2-48.)

9

comparable medical/surgical benefits) (emphasis added).

Plaintiffs then vaguely identify a category of "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities" that Plaintiffs say are the "medical/surgical treatment [analogues] to the benefits the Plan excluded for T.'s [residential treatment]." (Compl. ¶ 39.) But they do not explain how the treatment in these facilities is analogous to the treatment T. received. Their reliance on a general category of intermediary services, without more elaboration, is insufficient to satisfy the elements of Parity Act claims.[3]

Along similar lines, Plaintiffs do not sufficiently allege an "as applied" disparity between behavioral health treatment coverage and medical/surgical treatment coverage. At most, they state that UBH required T., who was being treated at a sub-acute facility, to "satisfy [more stringent] acute care medical necessity criteria in order to obtain coverage for residential treatment … [even though] the Plan does not require individuals at sub-acute inpatient facilities receiving treatment for medical/surgical conditions to satisfy acute care medical necessity criteria …." (Compl. ¶ 40.) Their reference to "sub-acute inpatient facilities" is simply too broad to satisfy the requirement that Plaintiffs identify sufficient analogous treatment areas.

In short, Plaintiffs' allegations provide nothing more than vague, conclusory, and generic statements that paraphrase or directly quote the statute's and regulation's language without tying the standards to any facts. Accordingly, the court dismisses Plaintiffs' MHPAEA claim.

**ORDER**

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF

---

[3] In addition, Plaintiffs' analogy to hospice care is not plausible.

No. 7) is GRANTED IN PART AND DENIED IN PART as follows:

1. Plaintiffs' First Cause of Action is STAYED pending resolution of the class action in <u>Wit v. United Behavioral Health</u>, 3:14-cv-2346-JCS (N.D. Cal., May 21, 2014).
2. Plaintiffs' MHPAEA claim is DISMISSED.
3. Plaintiff Cathy W. is DISMISSED.

DATED this 18th day of December, 2019.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge